PER CURIAM.
We affirm the trial court’s decision dismissing with prejudice the amended complaint filed in this case. The twelve-count amended complaint alleged claims for negligence and for intentional torts on behalf of the plaintiff Jessica Scofield and her father Steve Scofield. The claims derived from an alleged obligation of the defendants, Dr. Paul Sibley and the All Women’s Health Center of Gainesville, Inc., to notify Mr. Scofield of the intent to perform an abortion on his daughter in September 1997, when she was fourteen years old, and obtain Mr. Scofield’s authorization for such procedure. The complaint also avers the former minor’s right to disavow her consent, upon attaining the age of majority, and then to sue for damages occasioned by the procedure. These claims are completely foreclosed by the Florida Supreme Court’s decision in In re T.W., 551 So.2d 1186 (Fla.1989).
Specifically, in T.W., the supreme court held that section 390.001(4)(a), Florida Statutes (Supp.1988), which required a minor to have parental consent before obtaining an abortion, violated the Florida Constitution. 551 So.2d at 1196. In doing so, the court relied on the privacy provision in article 1, section 23 of the Florida Constitution:
Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public’s right of access to public records and meetings as provided by law.
See T.W., 551 So.2d at 1191-92. The court reasoned, “Florida’s privacy provision is clearly implicated in a woman’s decision of whether or not to continue her pregnancy.” Id. at 1192. The court further noted:
The decision whether to obtain an abortion is fraught with specific physical, psychological, and economic implications of a uniquely personal nature for each woman. The Florida Constitution embodies the principle that “[f]ew decisions are more personal and intimate, more properly private, or more basic to individual dignity and autonomy, than a woman’s decision ... whether to end her pregnancy. A woman’s right to make that choice freely is fundamental.”
Id. at 1193 (citations omitted). The supreme court determined that, “based on the unambiguous language” of Florida’s privacy provision, “this freedom of choice concerning abortion extends to minors.” Id. The court then ruled that the challenged parental consent statute constituted a substantial invasion of the privacy of a pregnant minor. Id. at 1194-95.
*613 Our supreme court purported to recognize the interest of the parents of minor children, but no reader of T.W. can escape the conclusion that the court ultimately decreed that a minor’s right to privacy supersedes parental rights in the context of abortion:
We agree that the state’s interests in protecting minors and ' in preserving family unity are worthy objectives. Unlike the federal Constitution, however, which allows intrusion based on a “significant” state interest, the Florida Constitution requires a “compelling” state interest in all cases where the right to privacy is implicated. We note that Florida does not recognize these two interests as being sufficiently compelling to justify a parental consent requirement where procedures other than abortion are concerned. Section 743.065, Florida Statutes (1987), provides:
743.065 Unwed pregnant minor or minor mother; consent to medical services for minor or minor’s child valid.—
(1) An unwed pregnant minor may consent to the performance of medical or surgical care or services relating to her pregnancy by a hospital or clinic or by a physician licensed under chapter 458 or chapter 459, and such consent is valid and binding as if she had achieved her majority.
(2) An unwed minor mother may consent to the performance of medical or surgical care or services for her child by a hospital or clinic or by a physician licensed under chapter 458 or chapter 459, and such consent is valid and binding as if she had achieved her majority.
(3) Nothing in this act shall affect the provisions of s. 390.001 [the abortion statute].
Under this statute, a minor may consent, without parental approval, to any medical procedure involving her pregnancy or her existing child — no matter how dire the possible consequences— except abortion. Under In re Guardianship of Barry, 445 So.2d 365 (Fla. 2d DCA 1984) (parents permitted to authorize Removal of life support system from infant in permanent coma), this could include authority in certain circumstances to order life support, discontinued for a comatose child. In light of this wide authority that the state grants an unwed minor to make life-or-death decisions concerning herself or an existing child without parental consent, we are unable to discern a special compelling interest on the part of the state under Florida law in protecting the minor only where abortion is concerned. We fail to see the qualitative difference in terms of impact on the well-being of the minor between allowing the life of an existing child to come to an end and terminating a pregnancy, or between undergoing a highly dangerous medical procedure on oneself and undergoing a far less dangerous procedure to end one’s pregnancy. If any qualitative difference exists, it certainly is insufficient in terms of state interest. Although the state does have an interest in protecting minors, “the selective approach employed by the legislature evidences the limited nature of the ... interest being furthered by these provisions.” Ivey v. Bacardi Imports Co., 541 So.2d 1129, 1139 (Fla.1989). We note that the state’s adoption act similarly contains no requirement that a minor obtain parental consent prior to placing a child up for adoption, even though this decision clearly is fraught with intense emotional and societal consequences. See ch. 63, Fla.Stat. (1987).
*614 Id. at 1195 (citation and footnote omitted)(emphasis added).
The supreme court recently reaffirmed the T.W. decision. See N. Fla. Women’s Health & Counseling Servs., Inc. v. State of Fla., 866 So.2d 612, 638-41 (Fla.2003). In North Florida, the supreme court found unconstitutional the Parental Notice of Abortion Act. See id. at 638-41. In so doing, the court quoted extensively from the T.W. opinion and the trial court’s decision holding the statute unconstitutional. See id. The court stated, similar to its statements in T.W., “[F]ew decisions are more private and properly protected from government intrusion than a woman’s decision whether to continue her pregnancy, and yet the Act’s notification requirement prohibits a pregnant minor from keeping this matter private.” Id. at 632 (footnote omitted). The court also noted that “the extent of reliance on T.W. unquestionably has been great.” Id. at 638. Further,
During the past fourteen years, Floridians have organized their personal and family relationships based on the constitutional right articulated in that decision, and a generation of Florida women has matured during that period and has had an opportunity to participate equally in the social and economic life of this State due in part to the ability to make personal decisions based on T.W.
Id. at 638. See also N. Fla., 640 (Anstead, J., specially concurring) (explaining that T.W. “concludes that women, including unwed minors, are vested with the right, under Florida’s express constitutional right to privacy, to determine by themselves, and as a private matter, whether to terminate a pregnancy” and “[t]hat is the prevailing law”); Jones v. State, 619 So.2d 418, 420 (Fla. 5th DCA 1993) (explaining that “[t]he supreme court has ruled that a minor (of any age if such minor can become pregnant) has the constitutional right to an abortion without the parents knowledge or consent”), aff'd, 640 So.2d 1084 (Fla.1994).
AFFIRMED.
KAHN, WEBSTER and VAN NORTWICK, JJ„ CONCUR.